UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SIRIUS XM RADIO INC.,

        Plaintiff,

   v.

AURA MULTIMEDIA CORPORATION f/k/a AMTC BUSINESS MUSIC CORPORATION, AURA MULTIMEDIA TECHNOLOGIES COMPANY LLC, and CLAYTON B. BURTON, JR.,

        Defendants.

Case No. 1:21-cv-6963(GHW)(SDA)

---

**PLAINTIFF SIRIUS XM RADIO INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CLAYTON B. BURTON, JR.'S MOTION TO SET ASIDE DEFAULT**

McDermott Will & Emery LLP

Kristin Going
Monica S. Asher
Kierstin S. Fowler
One Vanderbilt Avenue
New York, NY 10017
Tel: (212) 547-5429
Fax: (646) 417-7313
kgoing@mwe.com
masher@mwe.com
ksfowler@mwe.com

Robert W. Zelnick (*admitted pro hac vice*)
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
rzelnick@mwe.com

*Attorneys for Sirius XM Radio Inc.*

Plaintiff Sirius XM Radio Inc. ("SiriusXM" or "Plaintiff"), by and through its undersigned counsel, submits this Memorandum of Law in Opposition to Defendant Clayton B. Burton, Jr.'s ("Mr. Burton"), Motion to Set Aside Default (D.E. 55) (the "Motion").

## PRELIMINARY STATEMENT

Mr. Burton has been aware of this litigation since shortly after it was filed, but has only recently chosen to appear months later. Now he seeks relief from this Court, but he is far too late.

Plaintiff commenced this action on August 18, 2021 by the filing of a summons and complaint (D.E. 1) (the "Complaint"). Since then, the action has been mired with delays caused by an inability to serve Mr. Burton personally and his attempt to avoid the litigation altogether. Despite knowing that the action had been filed against him, it was not until SiriusXM filed its motion for default judgment – when Mr. Burton presumably first realized that he could face judgment and personal liability – that he ultimately saw fit to appear. And when he did appear on January 31, 2022, five days after SiriusXM filed its default motion, Mr. Burton admitted that he had been aware of the litigation for months and chose to do nothing.

Nearly four months earlier, in October 2021 Mr. Burton had instructed an attorney, Mr. Marcus Castillo ("Mr. Castillo"), to contact Plaintiff's counsel to resolve the claims against him on his behalf. When Mr. Burton could not resolve the litigation on the terms he wanted, he chose to ignore the litigation and stick his head in the sand instead. Meanwhile, this Court went on to hold multiple telephonic hearings (which Mr. Burton did not attend) and SiriusXM moved for an order authorizing alternative service (which was granted), applied for a certificate of default against Mr. Burton (which was issued), and filed a motion for default judgment – all at great expense to SiriusXM. As an attorney, Mr. Burton was aware of the consequences of not responding to a lawsuit, and, despite his *pro se* status, is plainly able to litigate on his own behalf. He made a deliberate decision not to participate in this litigation and to hope for the best.

The Court should not reward or disregard Mr. Burton's willful choices. Mr. Burton's gamesmanship has prejudiced SiriusXM and will continue to do so if he is able to proceed. SiriusXM understands the Court's preference for determination on the merits and its corresponding inclination to vacate an entry of default; however, this is not the case of a missing defendant suddenly found and made aware. This is a defendant who knew about the litigation, instructed counsel to try to settle it on his behalf, had his counsel engage with the plaintiff, was informed that plaintiff would not agree to Mr. Burton's settlement terms, knew that the plaintiff was trying to serve him personally, and willfully and knowingly defaulted. The Court should deny Mr. Burton's Motion.

## ARGUMENT

Federal Rule of Civil Procedure 55(c) provides that an entry of default may be set aside "for good cause" shown. Fed. R. Civ. P. 55(c). When considering whether to set aside an entry of default, "the Second Circuit teaches that courts are to consider the following three factors: '(1) whether default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.'" *Brown v. Gabbidon*, No. 06CIV8148HB, 2007 WL 1423788, at *2 (S.D.N.Y. May 14, 2007) (*citing Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir.1993)). "Each of these factors *must* be considered by the Court." *Id.*

On a motion to set aside an entry of default, "the burden of proof is shifted from the Plaintiff to the Defendant." *Id.* Mr. Burton fails to meet his burden.

### I.   MR. BURTON'S DEFAULT WAS WILLFUL

"[W]here it is shown that a defendant is aware of the action pending against him, the defendant is deemed to have acted willfully if he fails to file a responsive pleading." *Nana v. Le Viking LLC*, No. 17 CIV. 928 (CM), 2020 WL 3182769, at *3 (S.D.N.Y. June 15, 2020)); *see also*

2

*Schwarz v. Thinkstrategy Cap. Mgmt. LLC*, No. 09 CIV. 9346 (PAE), 2016 WL 29626, at *4 (S.D.N.Y. Jan. 4, 2016) ("For the purpose of vacating default judgments, 'willfulness' requires more than 'carelessness or negligent errors,' though default judgments should be enforced where they 'arise from egregious or deliberate conduct.'") (*citing Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)). Mr. Burton deliberately ignored this litigation, which he knew to be proceeding. His conduct, therefore, was willful.

Mr. Burton admits that he became aware of the litigation and engaged a lawyer, Mr. Castillo, to represent him and contact Plaintiff on his behalf. (Motion ¶ 4.) Mr. Castillo emailed Plaintiff's counsel, Ms. Monica Asher, on October 5, 2021, seeking to resolve the claims against Mr. Burton. (Declaration of Monica S. Asher, dated April 1, 2022 ("Asher Decl."), ¶ 6.) Mr. Castillo and Ms. Asher spoke by telephone on October 12, 2021 and corresponded again on October 26, 2021. (*Id*. ¶ 7, Ex. E.) In her October 26, 2021 correspondence, Ms. Asher advised Mr. Castillo of a November 3, 2021 telephonic hearing scheduled by the Court. (*Id.*) Ms. Asher also advised Mr. Castillo of Plaintiff's difficulty locating Mr. Burton for personal service and requested that Mr. Castillo accept service of the complaint on Mr. Burton's behalf. (*Id.*) Mr. Castillo responded that he "immediately passed [Ms. Asher's email] onto Mr. Burton" and that he would no longer be involved in the matter or representing Mr. Burton and so could not accept service. (*Id.*) Mr. Castillo must have been in communication with Mr. Burton at the time to convey that the settlement effort had failed and to terminate his involvement in the matter. Still, Mr. Burton did not himself respond to Ms. Asher, attend the Court's November 3, 2021 conference, nor appear in the litigation at all.

Mr. Burton also did not respond to SiriusXM's direct outreach to him, by emails to claytonbburton@gmail.com – the email address that is listed on his profile with the Florida State

3

Bar.[1] (Asher Decl. Ex. B.) Mr. Burton does not disavow this email address in his Motion and, though his Florida Bar admission is inactive, his profile includes his current address. (*See* Asher Decl. Ex. B.) SiriusXM had attempted to service Mr. Burton personally at his current address in September 2021, through the Dixie County Sheriff, but the sheriff was unable to serve him.[2] (Asher Decl. Ex. C.)

Mr. Burton claims that his default was not willful and that he ignored the complaint because he was "unserved" by SiriusXM. (Motion ¶¶ 5-7.) However, Mr. Burton attempts to conflate his <u>knowledge</u> of the lawsuit with his willful decision not to answer (on the theory that he had not been properly served). SiriusXM served Mr. Burton in accordance with the Court's December 4, 2021 Order granting (D.E. 36) its motion for alternative service (D.E.s 33-35), by email to Mr. Burton and to Mr. Castillo. Mr. Burton admits that he contacted Mr. Castillo to follow-up on the litigation, and that Mr. Castillo told Mr. Burton that "he had been sent documents by Plaintiff's counsel, with a request to forward [the documents]" to him. (Motion ¶ 5.) Mr. Burton's claim that he allegedly never received the documents forwarded to him by Mr. Castillo is of no consequence, because he admits that he was aware of the litigation against him for months prior.

Despite his demonstrated awareness of the ongoing litigation and settlement negotiations, Mr. Burton did not appear in the action, did not attend the Court's conferences, and did not file a responsive pleading. This deliberate choice to ignore the litigation demonstrates that Mr. Burton's default was willful. *Kramer v. Young Money Ent., LLC*, No. 16 CIV. 1886 (VM), 2016 WL 7190079, at *4 (S.D.N.Y. Nov. 18, 2016) (holding that "Defendants' default appears to have been

---

[1] Ms. Asher emailed Mr. Burton on September 24, 2021 (advising him of the litigation and attaching the summons and complaint), on December 6, 2021 (in accordance with the Court's December 4, 2021 order authorizing alternative service by email), and on January 26, 2021 (serving SiriusXM's motion for default judgment).

[2] Mr. Burton was also the registered agent for co-defendants Aura Multimedia Corporation f/k/a AMTC Business Music Corporation and Aura Multimedia Technologies Company LLC (collectively, the "Corporate Defendants"). (Asher Decl. ¶ 3.) The Corporate Defendants were served by service on the Secretary of State (*id.* ¶ 3, Ex. A), and so Mr. Burton should have received the complaint in that capacity as well.

willful" because the "Court cannot find that Defendants did not know of the pendency of this action and could not have appeared" where an attorney represented "Defendants in connection with the Settlement Agreement[.]").

This case is distinguishable from the case *Alexander v. Private Protective Services, Inc.*, in which this Court vacated an entry of default finding that the defendant's default was not willful. No. 1:19-cv-10004, 2021 WL 3862057 (S.D.N.Y. Aug. 30. 2021). In *Alexander*, this Court found that the defendant had been "at worst" negligent in failing to update the New York Secretary of State with its new address and that there was no evidence that the defendant had ever received copies of any documents filed in the case. *Id*. at *2. Here, Mr. Burton admits that he was aware of the litigation and the complaint was sent to him directly and through his counsel.[3] He was also served months earlier as the registered agent for the corporate co-defendants, where he was also a personally named party. Mr. Burton's default was not negligent, it was intentional.

## II. SIRIUSXM IS PREJUDICED

Vacating Mr. Burton's default would prejudice SiriusXM. As a preliminary matter, SiriusXM has spent thousands of dollars that it would not have had to spend if Mr. Burton had appeared when he became aware of the litigation, accepted service when asked, or even simply responded to any of SiriusXM's multiple outreaches. Instead, Mr. Burton sat on his hands, played games, and let SiriusXM expend time, effort, and money, and likewise let the Court expend time and effort, managing and responding to his default. Allowing Mr. Burton to join the litigation without consequence now, when he has finally decided he is ready, would be inequitable.

---

[3] In *Alexander*, the Court noted that the plaintiff had not included a copy of his pleading with his email to the defendant. *Alexander*, 2021 WL 3862057 at *2. Here, SiriusXM emailed the complaint directly to Mr. Burton on September 24, 2021 and December 6, 2021.

5

Setting aside the default would also delay SiriusXM's ability to collect on an ultimate judgment and thus cause it further prejudice. *Matrix Polymers, Inc. v. A-E Packaging, Inc.*, No. 15CV6040LDWSIL, 2017 WL 9485652, at *11 (E.D.N.Y. Jan. 5, 2017) ("To establish prejudice in the context of a default, delay alone is not a sufficient basis, and a plaintiff must instead show something more, such as that the delay may thwart plaintiff's recovery or remedy.") (internal citations omitted), *report and recommendation adopted,* No. CV 15-6040, 2017 WL 2189546 (E.D.N.Y. May 18, 2017).

During the telephonic conference with the Court on February 25, 2022, Mr. Burton expressed that SiriusXM would experience difficulty in recovering from him and the Corporate Defendants. (*See* D.E. 49 ("The arrival of the COVID-19 pandemic in early 2020 shuttered the majority of the Business' customers and eliminated a majority of its revenue.").) If the litigation were to continue to be delayed, financial resources may be further depleted by other creditors.

The Corporate Defendants' business hardships and alleged closure provide sufficient reason for determining that further delay will make it less likely that Plaintiff will be able to recover. *See Chudomel v. Dynamic Recovery Servs., Inc.*, No. 12-CV-05365 NGG RLM, 2013 WL 5970613, at *6 (E.D.N.Y. Nov. 8, 2013) ("In this case, the potential prejudice to plaintiff if the entry of default were vacated consists of her diminished ability to collect on a judgment against defendant: defendant's attorney acknowledged during the July 31st conference with the Court that defendant is suffering from financial troubles."). The Corporate Defendants' business hardships are relevant to the Motion by Mr. Burton, individually. *See Lopez v. Traffic Bar & Rest. Inc.*, No. 12 CIV. 8111, 2015 WL 545190, at *5 (S.D.N.Y. Feb. 9, 2015) (finding prejudice and explaining that "[g]iven that [the defendant corporation] has now closed and is therefore no longer

6

profitable, the plaintiffs reasonably express concern that the individual and corporate defendants may be judgment-proof by the conclusion of this litigation.").

Accordingly, SiriusXM has suffered prejudice and will continue to suffer prejudice due to the delay in its recovery against Mr. Burton if his motion is granted.[4]

### III. MR. BURTON DOES NOT HAVE A MERITORIOUS DEFENSE

For purposes of a motion to set aside an entry of default, the "test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Nana v. Le Viking LLC*, No. 17 CIV. 928 (CM), 2020 WL 3182769, at *4 (S.D.N.Y. June 15, 2020).

Mr. Burton argues that SiriusXM has "failed to state a claim against [him] for which relief can be granted" and that "jurisdiction and venue are improper" with respect to Mr. Burton. (Motion at ¶ 9.) For the reasons set forth in SiriusXM's opposition to Mr. Burton's motion to dismiss (D.E. 56), Mr. Burton is incorrect. SiriusXM refers to the Court to its Memorandum of Law in Opposition to Mr. Burton's motion to dismiss for its complete response to Mr. Burton's defense. None of the evidence set forth by Mr. Burton would establish a complete defense at trial, and, accordingly, Mr. Burton fails to establish a meritorious defense for vacating his default.

In brief, Mr. Burton is subject to personal jurisdiction in New York, and venue is proper in this Court, pursuant to a Commercial Service Distribution Agreement, dated May 4, 2016, which he signed on behalf of Aura Multimedia Corporation in his capacity as President of that Company. (D.E. 56 at 6-14.) Mr. Burton's role as an officer and agent of the Corporate Defendants, and his

---

[4] This case is again distinguishable from *Alexander*, where the Court found no prejudice because money damages were not recoverable under the claim asserted. *Alexander*, 2021 WL 3862057 at *3. Here, SiriusXM is entitled to, *inter alia*, actual damages on its trademark infringement claims and statutory damages on its trademark counterfeiting claims against Mr. Burton, for the reasons explained in Plaintiff's earlier-filed motion for default judgment. (D.E. 43 at 19-22.)

7

activities in connection with their relationship with SiriusXM, subject him to personal jurisdiction in New York. Mr. Burton's assertion that he is a Florida resident (D.E. 49 at ¶ 4), is not a defense because his business activities subject him to jurisdiction in New York.

As pled in the Complaint, Mr. Burton was the primary actor with respect to the Distribution Agreements and the trademark infringement underlying the Complaint. He is the registered agent and manager of the Corporate Defendant Aura Multimedia Tech and registered agent and President of Corporate Defendant Aura Multimedia Corporation. (Compl. ¶ 9.) Mr. Burton's titles, which he still maintained at the time of the filing of the Complaint, support that the Court has personal jurisdiction over him. (*Id.*) *See Starr v. Michael Stars, Inc.*, No. 512CV860NAMATB, 2013 WL 12291517, at *2 (N.D.N.Y. Mar. 21, 2013) ("Authorization to do business in New York and designation of a registered agent for service of process amount to consent to personal jurisdiction in New York State.") (collecting cases); *see also Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 543 (S.D.N.Y. 2015) (holding that "the Court may exercise personal jurisdiction over [individual defendant]" where individual defendant was corporate defendant's "President, Manager, and Registered Agent and he is identified as 'Manager' of [corporate defendant]" in relevant email). By his own admission, Mr. Burton "managed the day-to-day operations" of the Corporate Defendants. (D.E. 49 at ¶ 16.) This behavior establishes personal jurisdiction over the officer or manager of a corporation. *See Sea Tow Servs. Int'l, Inc. v. Pontin*, 472 F. Supp. 2d 349, 361 (E.D.N.Y. 2007) (holding that "the individual defendant was "subject to [the] Court's jurisdiction under Section 302(a)(1)" and was the "primary actor in the transactions that gave rise to the instant litigation" where he "operated and/or managed the corporate defendants").

Mr. Burton is also subject to personal liability in connection with the infringement and counterfeiting of SiriusXM's intellectual property. (D.E. 56 at 6-13, 15-17.) "It is well established in the Second Circuit that under the Lanham Act, a corporate officer may be held personally liable for trademark infringement and unfair competition if the officer is a moving, active, conscious, force behind [the defendant corporation's] infringement." *Chloe*, 2011 WL 3678802, at *4 (S.D.N.Y. Aug. 19, 2011) (internal citation omitted) (collecting cases). SiriusXM alleges in the complaint that Mr. Burton was the signatory of the Distribution Agreements and its registered agent and manager of Aura Multimedia Tech and the registered agent and president of AMTC. (Compl. ¶ 9.) It was through the Distribution Agreements that Defendants first came to use the SiriusXM marks. And it was pursuant to the terms of those agreements that Mr. Burton, specifically, was the recipient of the termination notice and the cease and desist letter. SiriusXM also alleges that Defendants, including Mr. Burton, caused the Lanham Act violations to occur. (*See, e.g.*, *id.* ¶ 39 ("Defendants' unauthorized advertising … is likely to cause confusion, mistake or to deceive customers."); ¶ 48 ("Defendants' use of counterfeits … is likely to cause confusion, mistake or to deceive customers."); ¶ 54 ("Defendants' use of the SiriusXM Mark … is likely to cause confusion …").) Mr. Burton's admission that he caused the cessation of the infringing conduct (D.E. 49 at ¶ 11), belies his attempt to distance himself from the Corporate Defendants and their actions. He has not provided any evidence that would establish a meritorious defense at trial.

## CONCLUSION

For the reason set forth above, SiriusXM respectfully requests that the Court deny Mr. Burton's motion to set aside default.

DATED:   New York, New York
             April 1, 2022

MCDERMOTT WILL & EMERY LLP

By: */s/Kristin K. Going*
Kristin K. Going
Monica S. Asher
Kierstin S. Fowler
One Vanderbilt Avenue
New York, NY 10017
Tel: (212) 547-5429
Fax: (646) 417-7313
kgoing@mwe.com
masher@mwe.com
ksfowler@mwe.com

Robert W. Zelnick (*admitted pro hac vice*)
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
rzelnick@mwe.com
Tel.: (202) 756-8377

*Attorneys for Sirius XM Radio Inc.*