UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Sirius XM Radio Inc.,

                      Plaintiff,

-against-

Aura Multimedia Corporation et al.,

                      Defendants.

1:21-cv-06963 (GHW) (SDA)

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE GREGORY H. WOODS, UNITED STATES DISTRICT JUDGE:**

Pending before the Court is the motion of Plaintiff Sirius XM Radio, Inc. ("Plaintiff" or "Sirius") for a default judgment against Defendants Aura Multimedia Corporation ("Aura Multimedia Corp.") and Aura Multimedia Technologies Company LLC ("Aura Multimedia Tech") (together, the "Aura Defendants") and Clayton B. Burton, Jr. ("Burton"). (Pl.'s 1/26/22 Mot., ECF No. 42.) I respectfully recommend that Plaintiff's motion be GRANTED IN PART and DENIED IN PART. Specifically, I recommend that the Court enter a default judgment against the Aura Defendants, and defer a determination as to the amount of damages to which Plaintiff is entitled, and whether to grant other relief to Plaintiff, until the claims against Burton are resolved.[1]

---

[1] On April 6, 2022, the Court vacated the Certificate of Default against Burton. (*See* 4/6/22 Opinion and Order and Report and Recommendation, ECF No. 60, at 15.) Thus, the motion for a default judgment against Burton is moot and the case is proceeding against him.

**BACKGROUND**

I.     **Established Facts as a Result of Defendants' Default**[2]

Sirius broadcasts music and non-music on a subscription fee basis, primarily delivering its services to receivers in vehicles and homes. (Wasby Decl., ECF No. 46, ¶ 2.) Sirius also operates a business establishment service, which offers music channels for performance of background music in retail establishments. (*Id*.)

Aura Multimedia Corp. is, *inter alia*, a provider of business music, audio/video messaging, digital signage and audio/video equipment. (Wasby Decl. ¶ 4.) Aura Multimedia Corp. was converted into Aura Multimedia Tech. (Asher 1/26/22 Decl., ECF No. 45, ¶ 3, Ex. A.)

On April 16, 2013, Sirius and Aura Multimedia Corp. entered into a three-year fixed term Commercial Service Distribution Agreement (as amended, the "2013 Distribution Agreement"), pursuant to which Sirius agreed to allow Aura Multimedia Corp. to sell Sirius satellite and Internet radio subscriptions and packages to Aura Multimedia Corp. customers. (Wasby Decl. ¶ 5, Ex. B.) Upon expiration of the 2013 Distribution Agreement, the parties entered into a second Commercial Service Distribution Agreement, dated as of April 1, 2016 (the "2016 Distribution Agreement"), which contained the same material terms as the 2013 Distribution Agreement. (*Id*. ¶ 6, Ex. C.)

Sirius performed all of its obligations under the 2013 and 2016 Distribution Agreements. (Wasby Decl. ¶ 7.) Beginning on April 6, 2020, Aura Multimedia Corp. stopped making payments it owed to Sirius under the terms of the 2016 Distribution Agreement. (*Id*.) Aura Multimedia Corp.

---

[2] In light of Defendants' default, the Court accepts Plaintiff's allegations as true, except for those pertaining to damages. *See, e.g.*, *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

failed to make payments to Sirius on eight occasions: April 6, 2020, June 6, 2020, June 27, 2020, July 30, 2020, August 8, 2020, September 4, 2020, October 9, 2020 and October 10, 2020. (*Id*. ¶ 8, Ex. D.)

The total principal amount due and outstanding by Aura Multimedia Corp. to Sirius for the unpaid invoices is $259,299.21. (Wasby Decl. ¶ 8, Ex. D.) Pursuant to Section 3.04(b) of the 2016 Distribution Agreement, interest accrued at a rate of 1.5% per month, compounded on a monthly basis, for any invoices not paid when due. (*Id*. ¶ 10, Ex. C.)

On August 6, 2020, Sirius notified Aura Multimedia Corp. by letter to Burton that it was terminating the 2016 Distribution Agreement, effective September 6, 2020. (Wasby Decl. ¶ 11, Ex. E.) Pursuant to Section 7.04 of the 2016 Distribution Agreement, after the 2016 Distribution Agreement was terminated, Aura Multimedia Corp. was to immediately "cease holding itself out as affiliated with SiriusXM or the SiriusXM Service in any way" and "discontinue use of the SiriusXM Marks and all SiriusXM-related sales and marketing materials and other tangible information and materials." (*Id*., Ex. C.)

After termination of the 2016 Distribution Agreement, Aura Multimedia Corp. continued to hold itself out as affiliated with Sirius and to use Sirius's marks, including on Aura Multimedia Corp.'s website, without Sirius's consent to do so. (Wasby Decl. ¶ 12.) For at least one year after the 2016 Distribution Agreement was terminated, Aura Multimedia Corp. touted a relationship with Sirius and used Sirius's marks on its website. (*Id*.)

On April 26, 2021, Sirius sent a cease and desist letter to Burton demanding that by May 5, 2021, Aura Multimedia Corp.: (i) immediately cease and desist from using any Sirius trademarks or promoting itself as an authorized seller of Sirius services; and (ii) pay all

outstanding amounts owed. (Wasby Decl., Ex. H.) Defendants did not respond to the cease and desist letter. (*Id*. ¶ 15.)

**II.  Procedural History**

On August 18, 2021, Sirius filed its Complaint in this action. (*See* Compl., ECF No. 1.) On August 20, 2021, this case was referred to me for general pretrial purposes and also to make reports and recommendations regarding dispositive motions. (*See* Order of Ref., ECF No. 12.)

On September 28, 2021, the Summons and Complaint were served on the Aura Defendants. (*See* Affs. of Service, ECF Nos. 17-20.) The Aura Defendants failed to timely appear in this action, and Certificates of Default were entered against them by the Clerk of Court on November 15, 2021. (*See* Certs. of Default, ECF Nos. 29-30.) On December 6, 2021, Burton was served with the Summons and Complaint through the means authorized by the Court. (12/6/21 Cert. of Service, ECF No. 37.) After Burton failed to timely respond to the Complaint, on January 4, 2022, a Certificate of Default was entered against him. (1/4/22 Cert. of Default, ECF No. 40.)

On January 26, 2022, Sirius filed the pending motion for a default judgment against the Aura Defendants and Burton. (*See* Pl.'s 1/26/22 Mot.) Thereafter, on January 31, 2022, Burton appeared in this action (Not. of Appearance, ECF No. 48) and, on March 15, 2022, filed a motion to set aside the default entered against him. (Burton 3/15/22 Mot., ECF No. 55.) On April 6, 2022, the Court vacated the Certificate of Default entered against Burton (*see* 4/6/22 Order, ECF No. 60), thereby mooting Plaintiff's motion for a default judgment against him.

**DISCUSSION**

**I.    Entry Of Default Judgment**

Plaintiff seeks a default judgment against the Aura Defendants based upon its breach of contract, Lanham Act, New York General Business Law and unfair competition claims. "[E]ven in the context of a default judgment, a district court is . . . required to determine whether [plaintiff's] allegations establish [defendant's] liability as a matter of law." *Bracken v. MH Pillars Inc.*, 290 F. Supp. 3d 258, 264 (S.D.N.Y. 2017) (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)). Thus, the Court considers below whether, assuming the allegations in the Complaint are true, the Aura Defendants are liable for each of the claims asserted.

**A.   Breach Of Contract**

In order to establish a claim for breach of contract under New York law,[3] a plaintiff must prove, "(1) the existence of a contract between itself and that defendant, (2) performance of the plaintiff's obligations under the contract, (3) breach of the contract, and (4) damages to the plaintiff caused by the defendant's breach." *In re M/V MSC FLAMINIA*, 339 F. Supp. 3d 185, 241-42 (S.D.N.Y. 2018) (citation omitted). In the present case, considering Plaintiff's submissions, including the well-pled allegations of the Complaint, Plaintiff has established the elements for a breach of contract claim against the Aura Defendants. Plaintiff alleges that a contract existed between Plaintiff and the Aura Defendants; that Plaintiff performed its obligations under the contract; that the Aura Defendants breached the contract by failing to pay invoices when due,

---

[3] The 2016 Distribution Agreement provides that it is governed by New York law. (*See* Wasby Decl., Ex. C, § 11.04.)

5

and by continuing to use the Sirius marks and to hold themselves out as affiliated with Sirius after termination of the 2016 Agreement; and that Plaintiff was damaged as a result.

### B. Lanham Act Claims

#### 1. Trademark Counterfeiting Under Section 1114 of the Lanham Act

To prove trademark counterfeiting under the Lanham Act, a plaintiff must show: (1) it owns or controls a legally protectable, registered trademark, and (2) the defendant used in commerce, without consent, a counterfeit of the trademark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services" and "such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a); *see also* 15 U.S.C. § 1127 (defining "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark"). "Consumer confusion is 'analyzed with reference to the eight factors first articulated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).'"[4] *Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 421 (S.D.N.Y. 2018) (citation omitted). However, "courts in this District generally agree that 'where counterfeit marks are involved, it is not necessary to perform the step-by-step examination of each *Polaroid* factor because counterfeit marks are inherently confusing.'" *Id*. (citation omitted).

Based upon Plaintiff's submissions, including the well-pled allegations of the Complaint, Plaintiff has established the liability of the Aura Defendants for trademark counterfeiting. First,

---

[4] The eight *Polaroid* factors are: "(1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market." *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 160 (2d Cir. 2016) (citation omitted).

Sirius owns and controls legally protectable, registered trademarks. (Wasby Decl. ¶ 3, Ex. A.) Second, without consent, the Aura Defendants used a counterfeit of Plaintiff's marks in connection with the sale and advertising of goods or services.[5] (*See id*. ¶ 12.) Third, the Aura Defendants use of the Sirius marks was inherently confusing.

### 2. Trademark Infringement Under Section 1114 of the Lanham Act

"To succeed in establishing liability for infringement under the Lanham Act, a plaintiff must prove: (1) that it owns a valid, protectible trademark; (2) that the defendant used the trademark in commerce and without consent; and (3) that there was a likelihood of consumer confusion." C=*Holdings B.V.*, 992 F. Supp. 2d at 239 (citing *1–800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406 (2d Cir. 2005); 15 U.S.C. § 1114(1)).

Based upon Plaintiff's submissions, including the well-pled allegations of the Complaint, Plaintiff has established the liability of the Aura Defendants for trademark infringement. As addressed above, Plaintiff registered its marks, has the exclusive rights to use them in commerce and has produced valid certifications of registration. (*See* Wasby Decl. ¶ 3, Ex. A.) In addition, the Aura Defendants' use of the Sirius marks was inherently confusing. *See MyPlayCity, Inc. v. Conduit Ltd.*, No. 10-CV-01615 (CM), 2012 WL 1107648, at *20 (S.D.N.Y. Mar. 30, 2012), *adhered to on reconsideration*, 2012 WL 2929392 (S.D.N.Y. July 18, 2012) ("When an ex-licensee continues to use a mark after its license expires, likelihood of confusion is established as a matter of law.").

---

[5] Plaintiff adequately has established that the Aura Defendants counterfeited Plaintiff's marks because they continued to display counterfeit Sirius marks to sell services on the Aura Multimedia Corp. website without Plaintiff's consent. *See C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 241 (S.D.N.Y. 2013) (use of trademark to sell products without consent of actual trademark holder constitutes use of counterfeit mark).

### 3. False Association Under Section 1124 of the Lanham Act

The elements of a claim for false association are the same as those for trademark infringement, discussed above. "To prevail on a claim of trademark infringement or false association, 'a plaintiff must show, first, that its mark merits protection, and, second, that the defendant's use of a similar mark is likely to cause consumer confusion.'" *Chanel, Inc. v. WGACA, LLC*, No. 18-CV-02253 (LLS), 2022 WL 902931, at *5 (S.D.N.Y. Mar. 28, 2022) (footnote omitted) (citing *Int'l Info. Sys. Sec. Certification Consortium, Inc.*, 823 F.3d at 160). As set forth above, Plaintiff has established these elements and it is entitled to a default judgment on its false association claim.

### 4. False Advertising Under Section 1125 of the Lanham Act

To establish a false advertising claim under Section 43(a) of the Lanham Act, a plaintiff must prove five elements: "1) the defendant has made a false or misleading statement; 2) the false or misleading statement has actually deceived or has the capacity to deceive a substantial portion of the intended audience; 3) the deception is material in that it is likely to influence purchasing decisions; 4) there is a likelihood of injury to [the] plaintiff, such as declining sales or loss of goodwill; and 5) the goods traveled in interstate commerce." *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, 348 F. Supp. 2d 165, 177-78 (S.D.N.Y. 2004).

Based upon Plaintiff's submissions, including the well-pled allegations of the Complaint, Plaintiff has established the liability of the Aura Defendants for false advertising. First, the Aura Defendants made false statements. After the 2016 Distribution Agreement was terminated, the Aura Defendants continued to state on their website that "[t]hrough its affiliate Aura Multimedia Corporation and SiriusXM Radio Inc . . . [Aura Multimedia Tech] is the largest and longest-

8

standing authorized reseller of SiriusXM Music for Business[.]" (*See* Wasby Decl. ¶ 12.) This statement was false. Second, customers were deceived, as reflected by the complaints filed with the Better Business Bureau and Florida Attorney General. (*Id*. ¶¶ 13-14, Exs. F-G.) Third, this deception was material and likely influenced customers' decisions to purchase the Aura Defendants goods and services. Fourth, Plaintiff likely lost revenue because customers would have been misled to purchase from the Aura Defendants instead of Plaintiff. Fifth, the Aura Defendants used Plaintiff's marks in interstate commerce in connection with the sale of their goods and services.

### 5. Trademark Dilution Under Section 1125 of the Lanham Act (and N.Y. Gen. Bus. Law § 360-1)

"The owner of a famous mark can succeed on a claim of trademark dilution under federal law against an individual or entity who 'commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.'" *Knowles-Carter v. Feyonce, Inc.*, 347 F. Supp. 3d 217, 227-28 (S.D.N.Y. 2018) (citing 15 U.S.C. § 1125(c)(1)). "To prevail on a claim for trademark dilution under New York General Business Law § 360-1, a plaintiff must prove (1) that the trademark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution either as a result of blurring or tarnishment." *Id*. (citations and internal quotation marks omitted).

Based upon Plaintiff's submissions, including the well-pled allegations of the Complaint, Plaintiff has established the liability of the Aura Defendants for trademark dilution under the Lanham Act and the New York General Business Law. Plaintiff owns a federal trademark registration for the Sirius marks. (Wasby Decl. ¶ 3, Ex. A.) In addition, the Sirius marks are

9

distinctive and famous throughout the United States. (*See id*. ¶ 3.) As set forth above, the Aura Defendants continued to display Plaintiff's marks on their website and to promote the existence of a partnership between the Aura Defendants and Plaintiff that no longer existed which caused customer complaints that were attributed to Plaintiff.

### 6. Unfair and Deceptive Trade Practices Under N.Y. Gen. Bus. Law § 349

To state a claim pursuant to GBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result as a result of the allegedly deceptive act or practice." *Nick's Garage, Inc. v. Progressive Case. Ins. Co*., 875 F.3d 107, 124 (2d Cir. 2017) (citation omitted).

Based upon Plaintiff's submissions, including the well-pled allegations of the Complaint, Plaintiff has established the liability of the Aura Defendants for a violation of GBL § 349. The Aura Defendants' conduct was consumer-oriented. The 2016 Distribution Agreement allowed Aura Multimedia Tech to sell Plaintiff's satellite and Internet radio subscription packages to its customers. (*See* Wasby Decl., Ex. C.) By continuing to display Plaintiff's marks and Plaintiff's brand, the Aura Defendants continued to attract potential Sirius customers and to deceive their customers into purchasing services.

### C. Unfair Competition Claims

"The elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims*." ESPN, Inc. v. Quiksilver, Inc*., 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008). "[T]o state a claim for New York common law unfair competition, the party making the claim must demonstrate that (1) it possesses a valid, protectible mark; and (2) that the result of the defendant's alleged use is a likelihood of confusion

between the marks of the alleged infringer and the charging party." *Id*. (internal citations omitted). New York unfair competition law also includes "some element of bad faith." *Id*. (citations omitted).

Based upon Plaintiff's submissions, including the well-pled allegations of the Complaint, Plaintiff has established the liability of the Aura Defendants for unfair competition. Plaintiff established trademark infringement by Defendants, and thus met the elements of a claim for unfair competition under New York law. In addition, Plaintiff demonstrated that the Aura Defendants acted in bad faith as they continued to display references to Sirius on their website even after Plaintiff sent its cease and desist letter and, at least initially, after Plaintiff filed this action.

II.     **Damages And Other Relief**

Now that liability of the Aura Defendants has been considered, the Court turns to the issue of damages and other relief. Although a party's default is viewed as a concession of all well-pled allegations of liability, it is not considered an admission of damages. "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Am. Jewish Comm. v. Berman*, No. 15-CV-05983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)), *report and recommendation adopted*, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016).

The Court recommends that the determination of the amount of damages and other relief be deferred until the claims against Burton are resolved. "[W]here there are answering

11

defendants 'it is appropriate to enter judgment solely as to liability and not as to the amount of damages to be assessed against the defaulting part[ies], since a separate determination of damages would pose the prospect of inconsistent judgments.'" *3947 Austin Blvd. Assocs., LLC v. M.K.D. Cap. Corp.*, No. 04-CV-08596 (NRB), 2006 WL 785272, at *2 (S.D.N.Y. Mar. 24, 2006) (citation and footnote omitted); *see also Off. Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. 13-CV-05475 (JS) (AKT), 2017 WL 9486443, at *9 (E.D.N.Y. Aug. 3, 2017) (recommending default judgement and deferring as to amount of judgment where non-defaulting defendants were present), *report and recommendation adopted*, 2017 WL 3981299 (E.D.N.Y. Sept. 11, 2017).

Eight of nine of Plaintiff's claims in the Complaint are asserted against both the Aura Defendants and Burton. (*See* Compl. ¶¶ 37-87.) Plaintiff seeks $2 million on these claims. (*See* Pl.'s 1/26/22 Mem., ECF No. 43, at 25.) Unless the claims against Burton are dismissed or settled, a trial will be held as to Burton's liability and, if liability is established, the amount of damages to be awarded against Burton will be decided at trial. Any damages recommended by me now against the Aura Defendants on the foregoing eight claims could be inconsistent with the damages awarded at trial against Burton (whose liability would be derivative of the liability of the Aura Defendants) on the very same claims.

Plaintiff's breach of contract claim is asserted only against the Aura Defendants, and not Burton, and is for a sum certain. (*See* Compl. ¶¶ 31-36.) If Plaintiff believes that it can satisfy the requirements for certification under Rule 54(b) of the Federal Rules of Civil Procedure, so as to have a final judgment entered against the Aura Defendants on that single claim, before resolution of the other eight claims, then Plaintiff can move separately for entry of a final judgment as to

that claim. *See Lara-Grimaldi v. Cty. of Putnam*, No. 17-CV-00622 (KMK), 2022 WL 736427, at *2 (S.D.N.Y. Mar. 11, 2022) (discussing legal standards for Rule 54(b) certification).[6]

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendants' motion for a default judgment be GRANTED IN PART and DENIED IN PART. I recommend that the Court enter a default judgment in favor of Plaintiff against the Aura Defendants on Plaintiff's breach of contract, Lanham Act, New York General Business Law and unfair competition claims as to liability. I further recommend that the Court defer a determination as to the amount of damages to which Plaintiff is entitled, and whether to grant other relief to Plaintiff, until the claims against Burton are resolved.

Dated:   New York, New York
         April 12, 2022

_____
**STEWART D. AARON**
**United States Magistrate Judge**

\*          \*          \*

---

[6] With respect to injunctive relief, Burton states that he "rectified" the use of Sirius's name on Aura Multimedia Corp.'s website (*see* Burton 2/7/22 Mot., ECF No. 49, ¶ 11), which Plaintiff does not dispute. Indeed, Plaintiff admits that references to Sirius were removed from Aura Multimedia Corp.'s website after the filing of the Complaint in this action. (*See* Pl.'s 1/26/22 Mem. at 17.) Even if Plaintiff ultimately is entitled to a permanent injunction because of the risk that the Aura Defendants might again use Plaintiff's marks, as Plaintiff contends (*see* Pl.'s 1/26/22 Mem. at 17), such an injunction can be issued at the end of the case. In addition, the amount of attorneys' fees, if any, due to Plaintiff can be determined at the end of the case.

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Woods.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).